**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case No. 16-mj_____ |
| FOURTY-TWO CELLULAR PHONES LOCATED AT THE FEDERAL BUREAU OF INVESTIGATION WASHINGTON FIELD OFFICE | |

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR CELLULAR PHONES

Your affiant, E. ANDREW FERRITER, being duly sworn, deposes, and states as follows:

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of cellular phones that are currently in the possession of law enforcement and described in Attachment A, and the extraction from those cellular phones of electronically stored information as described in Attachment B.

## I.      AFFIANT'S BACKGROUND

2.      I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3.      I am a Special Agent (SA) of the United States Department of Justice (DOJ), Federal Bureau of Investigation (FBI) and have been so employed since October 2012.  I am currently assigned to the FBI Washington Field Office ("WFO") in Washington, D.C.  I successfully completed New Agent training at the FBI Academy in Quantico, Virginia, which included extensive training on drug enforcement and criminal investigations.  Since October 2015, I have been assigned to the FBI's Washington, D.C. Safe Streets Task Force, which investigates violations of federal drug, gang, and firearms statutes.  I am responsible for

investigations involving unlawful activities to include gangs/criminal enterprises, racketeering, firearm offenses, and violent crimes.

## II.   AFFIANT'S KNOWLEDGE, TRAINING, AND EXPERIENCE RELATING TO CELLULAR PHONES

4.      Based on your affiant's knowledge, training, and experience, a cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone.

5.      In addition to enabling voice communications, cellular telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. In this capacity, your affiant knows that a cellular phone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and personal digital assistant (PDA), and can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. Even when a user deletes information from a cellular phone, it can sometimes be recovered with forensics tools.

6.      In your affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Your affiant also knows that those involved in criminal activities take, or cause to be taken, photographs of themselves, their associates, property derived from their criminal activities, and their products, on cellular telephones.

7.      Your affiant has consulted with forensic cellular phone examiners who regularly conduct examinations of cellular phones and has learned that conducting cellular phone examinations is a highly technical process using specific tools for which the examiners receive training. During the extraction process, examiners are not able to parse the data in specific date ranges or to limit the search to an earlier date range. In some cases, deleted files or fragments of files may not contain date and time stamps. As a result, examiners are typically unable to extract cellphone contents only within a specified date range

8.      Analyzing electronic handheld devices for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. Such devices utilize a vast array of different operating systems, software, and set-ups. The variety of hardware and software available requires even experts to specialize in some systems and applications. Thus it is difficult to know prior to the search which expert possesses sufficient specialized skill to best analyze the system and its data. No matter which system is used, however, data analysis protocols are exacting scientific procedures, designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Since electronic evidence is extremely vulnerable to tampering or destruction (either from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis. Furthermore, there is often no software tools

designed for forensic searches of particular handheld devices. Thus, searching for and retrieving data from a device is even more complicated than searching a computer, even if the device has a much smaller memory capacity than a computer. For the foregoing reasons, the device will be removed from the searched premises if the agent deems it necessary in order to conduct an efficient, complete, secure, and accurate search of the device

9.      Searching the device for the evidence described above may require a range of data analysis techniques. In some cases, it is possible for agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, agents may be able to execute a "keyword" search that searches through the files stored in a computer for special words that are likely to appear only in the materials covered by a warrant. Similarly, agents may be able to locate the materials covered in the warrant by looking for particular directory or file names. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide files and directories; encode communications to avoid using key words; attempt to delete files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described above.

10.     Cellular telephone devices contain unique numerically assigned numbers to differentiate them from other devices. Certain types of those numbers are: International Mobile Equipment Identity (IMEI) numbers and Mobile Equipment Identifier (MEID) numbers. MEID

numbers often have multiple formats, MEID "HEX" and MEID "DEC." Federal Communication

Commission numbers (FCC ID) numbers are assigned to all devices subject to certification.

### III.   AFFIANT'S KNOWLEDGE OF CELLPHONES TO NARCOTICS TRAFFICKING

11.     Based on your affiant's knowledge, training, and experience, and in the

knowledge, training, and experience of other members of the FBI's Washington, D.C. Safe

Streets Task Force, cellphones are tools of the narcotics trade. Narcotics traffickers communicate

with customers, suppliers, and coconspirators via cellphones. Narcotics traffickers use cellphones

to arrange for meetings, request narcotics, take narcotics orders, and arrange for coconspirators to

obtain and distribute narcotics. To avoid detection by law enforcement, drug traffickers

commonly use more than one cellphone and often send text messages, rather than engage in oral

communications.

12.     Cellphones used by narcotics traffickers contain valuable information and

evidence relating to their narcotics trafficking.  Such information consists of, but is not limited

to: call logs, phone books, photographs, voice mail messages, text messages, images and video,

Global Positioning System data, and any other stored electronic data. This information can: (i)

reflect the preparation for, arrangement of, and commission of the trafficking of narcotics; (ii)

identify locations where narcotics traffickers traveled to before and after transporting or selling

narcotics; (iii) reflect the ownership and use of the cellphones by the narcotics traffickers; (iv)

document meetings and communications between narcotics traffickers, their customers,

associates, and coconspirators; (v) reflect communications between narcotics traffickers and

other individuals, discussing the trafficking of narcotics; (vi) reflect communications between

narcotics traffickers and other individuals who may have assisted or provided support in the

trafficking of narcotics; (vii) document or contain evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of narcotics relating to the trafficking of narcotics; and (viii) document or contain evidence of the purchase of items from the assets derived from the trafficking of narcotics.

## IV.    FACTUAL BACKGROUND AND PROBABLE CAUSE

13.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### Title III Wire Investigation

14.    Since approximately 2006, the FBI Washington, D.C. Safe Streets Task Force (FBI) has worked with the Metropolitan Police Department (MPD) to combat violence in areas of Southeast, Washington, D.C. including MPD's Police Service Area ("PSA") 704. This PSA includes the area commonly known as "Parkland." The Villages of Parkland is comprised of several different apartment communities located adjacent to each other over a several block area in PSA 704, which includes the 3500 block of Stanton Road, Southeast. Using an undercover officer, the FBI made four controlled purchases of PCP from KIMERY MARTIN, JR. in the Villages of Parkland. These four purchases, which occurred on July 24, 2015, August 6, 2015, August 25, 2015, and October 2, 2015, all took place in the 3500 block of Stanton Road, Southeast.

15.    Based on these controlled purchases, the FBI initiated a Title III wire investigation. The wire investigation began on November 10, 2015 and concluded on September 6, 2016. The interception of wire and electronic communications of KIMERY MARTIN, DWIGHT HAYMAN, and TROY PROCTOR produced a clear picture of a structured drug distribution network that operated primarily in Southeast, Washington, D.C. and Maryland. The

initial three targeted phones belonged to MARTIN, who was conducting narcotics transactions in the Parklands area of Southeast, Washington, D.C. During initial interceptions of MARTIN's target telephones #1, #2, and #3, it became evident that MARTIN sold narcotics to individuals who met him both on foot and in cars in the area of Stanton Road, Southeast, and near his family's apartment at 2446 Wagner Street, Southeast. After DWIGHT HAYMAN was identified as MARTIN's supplier of cocaine base, the FBI obtained an order to intercept HAYMAN's phone. Similarly, once TROY PROCTOR was identified as a supplier of narcotics to HAYMAN and HAYMAN's associates, the FBI obtained an order to intercept PROCTOR's phone.

16.    On September 22, 2016, an indictment was filed in 16-cr-169 (APM) that charged fourteen individuals with among other charges, Conspiracy to Distribute and Possess with Intent to Distribute 500 or More Grams of Cocaine, 280 or More Grams of Cocaine Base, and 100 or More Grams of Heroin, in violation of 21 U.S.C. § 846. On September 27, 2016, law enforcement executed numerous search warrants on the defendants' residences and recovered various amounts of heroin, cocaine, and cocaine base, firearms, ammunition, large amounts of U.S. currency, and drug paraphernalia.[1] On October 11, 2016, a Superseding Indictment was filed that added new charges based on the evidence recovered during the search warrants, which included, but was not limited to, numerous firearms and distribution level quantities of narcotics and narcotics paraphernalia.

---

[1] On October 6, 2016, U.S. Magistrate Judge G. Michael Harvey issued Detention Memoranda in 16-cr-169 (APM) (D.E. 28-35) that found that based on the Government's proffer, the Defendants were engaged in the trafficking of narcotics.

**Target Phones**

17.     Throughout the conspiracy, the coconspirators communicated via cellphones, in oral and text message communications. Throughout the investigation, numerous targets used multiple cellphones or switched phones when engaging in narcotics trafficking. Upon execution of the search warrants contemporaneous with the coconspirators' arrests, forty-two separate electronic devices were recovered.

18.     The referenced cellphones below were seized as part of the execution of search warrants on September 27, 2016.[2]

19.     DWIGHT HAYMAN was arrested at 6101 Erika Place, Glenn Dale, Maryland. Your affiant assesses that this location was DWIGHT HAYMAN's primary residence.   A search warrant for this location was issued by the United States District Court in the District of Maryland on September 26, 2016.   This search warrant was executed concurrently to arresting DWIGHT HAYMAN on September 27, 2016.   In addition to this, another search warrant was issued by the same court for a black, 2015 BMW X5 with Maryland license plate 6CD8656.   During the search of this vehicle which was parked at 6101 Erika Place, Glenn Dale, Maryland, two cellphones were discovered in a black and blue BMW backpack and seized.   The first phone was a Samsung Galaxy S7 edge SM-G935T (IMEI: 356164071823441) (**Target Phone 1**) and the second phone was a ZTE Z828 (IMEI: 868622022031746) (**Target Phone 2**).   During the course of the investigation into DWIGHT HAYMAN, investigators observed him carrying this backpack while he was directly involved in trafficking narcotics.   Your affiant believes these phones were used

---

[2] Defendant TROY PROCTOR was arrested separately on September 28, 2016. A cellphone was recovered during a consent search of his vehicle. On November 10, 2016, in 16-mj-770, U.S. Magistrate Judge G. Michael Harvey issued a search warrant permitting the Government to search the cellphone.

by DWIGHT HAYMAN in order to facilitate narcotics trafficking.

20.    A search warrant was also executed at 5217 Kenmont Road, Oxon Hill, Maryland on September 27, 2016.   This search warrant was issued by the United States District Court in the District of Maryland on September 26, 2016.   Your affiant assesses this residence was a stash location used by DWIGHT HAYMAN in order to facilitate narcotics trafficking.   During the search of the residence, a phone was discovered and seized.   The phone was an Apple iPhone A1387 (FCC ID: BCG-E2430A) (**Target Phone 3**).   Your affiant believes this phone was used by DWIGHT HAYMAN in order to facilitate narcotics trafficking.

21.    KOREY HAYMAN was arrested at 2823 Eliston Street, Bowie, Maryland.   Your affiant assesses that this location was KOREY HAYMAN's primary residence.   A search warrant for this location was issued by the United States District Court in the District of Maryland on September 26, 2016.   This search warrant was executed concurrently to arresting KOREY HAYMAN on September 27, 2016.   During the search of this residence, five cellphones were discovered and seized.   The phones were a Samsung SM-B311V (HEX: A0000048FE48F5) (**Target Phone 4**), an LG LX610 (HEX: A0000019E82AAD) (**Target Phone 5**), an HTC phone (HEX: A100000781207C) (**Target Phone 6**), a Samsung SM-B311V (HEX: A0000048FE217D) (**Target Phone 7**), and a Samsung S7 edge (FCC ID: A3LSMG935US) (**Target Phone 8**).   Your affiant believes these phones were used by KOREY HAYMAN in order to facilitate narcotics trafficking.

22.    DALE MARTIN was arrested at 6810 Seat Pleasant Drive, Apartment T2, Seat Pleasant, Maryland.   Your affiant assesses that this location was MARTIN's primary residence. A search warrant for this location was issued by the United States District Court in the District of Maryland on September 26, 2016.   This search warrant was executed concurrently to arresting

MARTIN on September 27, 2016.   During the search of this residence, seven cellphones were discovered and seized.   The phones were an LG (IMEI: 014082009241573) (**Target Phone 9**), an LG LS665 (HEX: 35508207499118) (**Target Phone 10**), an Apple iPhone A1349 (FCC ID: BCG-E2422A) (**Target Phone 11**), a Samsung SCH-S738C (HEX: A00000442BF232) (**Target Phone 12**), an LG LS675 (HEX: 35694807356387) (**Target Phone 13**), a Samsung SGH-T139 (IMEI: 359081053047780) (**Target Phone 14**), and a Samsung SPH-M390 (HEX: A0000040A98FF7) (**Target Phone 15**). Your affiant believes these phones were used by MARTIN in order to facilitate narcotics trafficking.

23.     PAUL TYLER was arrested at 1820 Savannah Street, Southeast, Apartment 104, Washington, D.C.   Your affiant assesses that this location was TYLER's primary residence.   A search warrant for this location was issued by the United States District Court in the District of Columbia on September 23, 2016.   This search warrant was executed concurrently to arresting TYLER on September 27, 2016.   During the search of this residence, four cellphones were discovered and seized.   The phones were a Coolpad 3320A (IMEI: 867441026821254) (**Target Phone 16**), a Coolpad 3622A (IMEI: 869630021013044) (**Target Phone 17**), a Samsung Galaxy SM-G900T (IMEI: 353682062810625) (**Target Phone 18**), and a Samsung Galaxy SGH-I317 (IMEI: 355429050867573) (**Target Phone 19**).   Your affiant believes these phones were used by TYLER in order to facilitate narcotics trafficking.

24.     LONDELL MITCHELL was arrested at 4808 Alabama Avenue, Southeast, Apartment 2, Washington, D.C.   Your affiant assesses that this location was MITCHELL's primary residence.   A search warrant for this location was issued by the United States District Court in the District of Columbia on September 23, 2016.   This search warrant was executed concurrently to arresting MITCHELL on September 27, 2016.   During the search of this

10

residence, seven cellphones were discovered and seized.   The phones were a Samsung SM-G360T1 (IMEI:355637070989330) (**Target Phone 20**), an LG LS990 (HEX: 35259606294213) (**Target Phone 21**), a ZTE Z820 (IMEI: 868485027646243) (**Target Phone 22**), a Microsoft RM-1070 (IMEI: 357782060011998) (**Target Phone 23**), a Samsung SGH-T199 (IMEI: 358420055433518) (**Target Phone 24**), a Samsung SGH-T199 (IMEI: 358420055431496) (**Target Phone 25**), and a Sharp ADS1 (IMEI: 355654041509196) (**Target Phone 26**).   Your affiant believes these phones were used by MITCHELL in order to facilitate narcotics trafficking.

25.     DARNELL DUBOSE was arrested at 11 Forrester Street, Southeast, Apartment 101, Washington, D.C.   Your affiant assesses that this location was DUBOSE's primary residence.   A search warrant for this location was issued by the United States District Court in the District of Columbia on September 23, 2016.   This search warrant was executed concurrently to arresting DUBOSE on September 27, 2016.   During the search of this residence, four cellphones were discovered and seized.    The phones were an LG MS450 (IMEI: 014511001281740) (**Target Phone 27**), an Apple iPhone S A1688 (FCC ID: BCGE2946A) (**Target Phone 28**), an LG LGMS450 (IMEI: 014511001530393) (**Target Phone 29**), and an LG LGK428 (IMEI: 357795071094977) (**Target Phone 30**).   Your affiant believes these phones were used by DUBOSE in order to facilitate narcotics trafficking.

26.     MICHAEL WALLACE was arrested at 122 Ellsworth Street, Alexandria, Virginia.   Your affiant assesses that this location was WALLACE's primary residence.   A search warrant for this location was issued by the United States District Court in the Eastern District of Virginia on September 23, 2016.   This search warrant was executed concurrently to arresting WALLACE on September 27, 2016.   During the search of this residence, eight

cellphones were discovered and seized. The phones were an LG Rumor (HEX: A000000F24F841) (**Target Phone 31**), a Kyocera C5170 (HEX: A00000410053AD) (**Target Phone 32**), a Samsung Galaxy Note 5 (DEC: 256691584000476213) (**Target Phone 33**), a Samsung SPH-M390 (HEX A0000039518FF5) (**Target Phone 34**), a Sanyo Boost Mobile SCP2700 (HEX: A000001253B32104) (**Target Phone 35**), a Samsung SM-B311V (HEX: A0000048EA69F4) (**Target Phone 36**), a Samsung SM-B311V (HEX: A0000048F4B0B7) (**Target Phone 37**), and a Samsung SM-B311V (HEX: A0000047505E39) (**Target Phone 38**). Your affiant believes these phones were used by WALLACE in order to facilitate narcotics trafficking.

27.  GLENN WITHERSPOON was arrested at 86 Galveston Place, Southwest, Apartment D, Washington, D.C.  Your affiant assesses that this location was WITHERSPOON's primary residence.  A search warrant for this location was issued by the United States District Court in the District of Columbia on September 23, 2016.  This search warrant was executed concurrently to arresting WITHERSPOON on September 27, 2016.  During the search of this residence, four cellphones were discovered and seized.  The phones were a Cricket ZTE Z434 (IMEI: 864878020579169) (**Target Phone 39**), a ZTE Z433 (IMEI: 860370023115971) (**Target Phone 40**), a Samsung Galaxy S7 edge SM-G935T (IMEI: 357751070284077) (**Target Phone 41**), and an Apple iPhone A1549 (IMEI: 354446066608115) (**Target Phone 42**). Your affiant believes these phones were used by WITHERSPOON in order to facilitate narcotics trafficking.

## IV.  APPLICATION

28.  Rule 41 of the Federal Rules of Criminal Procedure permits the Government to search, analyze, and test electronic devices that are evidence of crime, instrumentalities of crime, and/or fruits of crime. The property sought to be searched is outlined in Attachment A of this

affidavit. The devices are currently in the lawful possession of the FBI. The devices came into the

FBI's lawful possession through the execution of search warrants on the Defendants' residences

on September 27, 2016.

29.     Based upon the above-referenced facts, there is probable cause to believe that

there are fruits and evidence of a Conspiracy to Distribute and Possess with Intent to Distribute

Five Hundred Grams or More of Cocaine, 280 Grams or More of Cocaine Base, and One Hundred

Grams or More of Heroin, in violation of 21 U.S.C. § 846 in the target cellphones. Specifically, in

this case, your affiant believes that the devices may contain any phone calls and text messages

that relate to the Defendants' illegal distribution of narcotics during the course of the conspiracy.

30.     Because this warrant seeks only permission to examine the devices already in law

enforcement's possession, the execution of this warrant does not involve the physical intrusion

onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize

execution of the warrant at any time in the day or night.

**V.     CONCLUSION**

31.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Target Phones described in Attachment A to seek the items

described in Attachment B.

_____
E. ANDREW FERRITER
Special Agent, Federal Bureau of Investigation

Subscribed and sworn before me this ___day of November, 2016.


_____
DEBORAH A. ROBINSON
United States Magistrate Judge
for the District of Columbia

13